IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNA CAUDLE MICHAILO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV915 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Donna Michailo ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits on September 23, 2009, alleging a disability onset date of September 9, 2009. (Tr. at 218-19.)[1] Her application was denied initially and upon reconsideration. (Tr. at 117-18, 145-48, 154-61.) Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 162-63.) Following the subsequent hearing on July 27, 2011, the ALJ issued a decision

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

finding Plaintiff not disabled within the meaning of the Act. (Tr. at 122-36.) However, on June 22, 2012, the Appeals Council vacated the hearing decision and remanded the case for further proceedings. (Tr. at 141-43.) Plaintiff therefore appeared and testified at a second hearing on December 5, 2012, following which the same ALJ issued another unfavorable decision. (Tr. at 25-37.) On June 27, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 6-10.)

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, anxiety, depression, and chemical dependence. (Tr. at 27.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 27-28.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with further limitations to unskilled, simple, routine, repetitive tasks, only occasional social interaction, and stable work hours and location. (Tr. at 28-29.)

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

At step four, the ALJ determined that the mental demands of Plaintiff's past relevant work exceeded her RFC. (Tr. at 35.) However, he concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 35-37.)

Plaintiff now raises three challenges to the ALJ's decision. Specifically, she argues that the ALJ failed to (1) properly weigh the opinion of Dr. Stanley Schaeffer, Plaintiff's primary care physician, (2) consider all of Plaintiff's medically determinable impairments and their combined effect, and (3) properly assess Plaintiff's credibility. Ultimately, none of these contentions merit remand.

A. Treating Physician Opinion

Plaintiff first contends that the ALJ failed to analyze Dr. Schaeffer's opinion in accordance with Social Security Ruling ("SSR") 96-2p and 20 C.F.R. § 404.1527(c), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); see also

<u>Craig</u>, 76 F.3d at 590; <u>Mastro</u>, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." <u>Thompson v. Colvin</u>, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); <u>see also</u> SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

In the present case, Dr. Schaeffer completed a three-page form, dated August 1, 2011, assessing Plaintiff's "physical abilities and limitations for Social Security disability claim" purposes. (Tr. at 548-50.) On this form, Dr. Schaeffer indicated that, due to back pain and anxiety, Plaintiff could perform no physical activities whatsoever, with the exception of

occasionally driving and occasionally using her hands and arms. (Tr. at 548-49.) He opined, for example, that Plaintiff could never sit or stand for any length of time or lift any amount of weight. (Tr. at 548.) He further opined that she could never tolerate cold or heat and could never tolerate noise exposure. (Tr. at 549.) He further asserted that Plaintiff's back pain has persisted with these restrictions since her alleged onset date, and that the pain continues to render her unable to work. (Tr. at 550.)

The ALJ assigned no weight to Dr. Schaeffer's opinions, explaining that "Dr. Schaeffer reported that the claimant had extremely severe physical functional limitations" and "essentially opined that the claimant could do absolutely nothing of a physical nature." (Tr. at 35.) The ALJ further explained that "[d]espite the extreme restrictions described by Dr. Schaeffer, the results of his own examinations of the claimant from August 1, 2011, through June 26, 2012, did not reveal any apparent musculoskeletal deficits or physical limitations," and that Dr. Schaeffer's opinions "are not supported by the totality of the objective medical evidence of record, including his own examinations of the claimant, which apparently did not show any significant musculoskeletal deficits." (Tr. at 31, 35.) In addition, the ALJ further noted that "none of the claimant's treating physicians, with the exception of Dr. Schaeffer . . . , reported any significant physical functional limitations for her from November of 2009 through October 23, 2012." (Tr. at 33.)

Although Plaintiff now contends that "the ALJ rejected Dr. Schaeffer's opinion without citing 'persuasive contradictory evidence,' and without assessing the factors contained in 20 CFR § 404.1527" (Pl.'s Br. [Doc. #7] at 10), the decision itself belies her claim. In accordance with 20 C.F.R. 404.1527(c), the ALJ recognized that Dr. Schaeffer served as

Plaintiff's treating family practice physician throughout the time period at issue (Tr. at 31), but found that his treatment records failed to support his opinion of total disability (Tr. at 31, 33, 34, 35). As noted above, the ALJ also recognized significant inconsistencies between Dr. Schaeffer's opinion and other record evidence. While recognizing that "imaging studies do show lumbar degenerative disk disease," the ALJ found that "with the exception of an occasional limping gait, the results of many physical examinations did not show any markedly severe difficulties with ambulation, moving about, with sitting, or with the use of upper extremities." (Tr. at 33; see also Tr. at 347, 378, 392, 431, 443, 446-47, 451, 454-55, 482-83, 537-42, 552, 556, 558, 563, 569, 588, 598.) In fact, on March 12, 2010, the State agency medical consultant found that Plaintiff could perform medium work "[g]iven the functional and objective evidence," including "mild facet degenerative changes," "antalgic gait," and grossly intact motor strength, reflexes, range of motion, coordination, and sensation. (Tr. at 34, 404-11.) Moreover, neither Plaintiff's treating neurosurgeon nor the independent medical examiner found any "satisfactory demonstration of a pain generator," despite multiple imaging studies. (Tr. at 30, 33, 376-80, 393, 431-34, 438-40, 443, 464-66.)[4] The ALJ therefore concluded that,

> based on the objective medical evidence contained in the record, including the
> treatment records from doctors Roy, Chasnis, Spivey, and Schaeffer . . . there is
> no evidence in the record of an impairment or combination of impairments that
> would preclude the claimant from standing, walking, and/or sitting for 6 hours

---

[4] As discussed further in Part B of this Discussion, Plaintiff contends that the ALJ erred in failing to mention Plaintiff's "partial sacralization of L5 with pseudoarticulation with the sacrum on the left," from an x-ray in 2007. (Pl.'s Br. at 11-12) (citing Tr. at 482). Plaintiff further hypothesizes that this impairment may have been the cause of her back pain. However, no medical provider, after reviewing Plaintiff's imaging studies, connected Plaintiff's partial sacralization to her symptoms. Indeed, the provider at Orthopaedic Specialists of the Carolinas, who treated Plaintiff from 2007 to 2009, noted that Plaintiff had low back and right buttock pain with "etiology unclear" after an updated February 2009 MRI. (Tr. at 327.)

(with normal breaks) in an 8-hour workday, or from lifting and carrying objects of medium weights.

(Tr. at 34) (citations omitted). In light of the above, the Court concludes that the ALJ gave good reasons in his decision for discounting Dr. Schaeffer's opinions and provided a "sufficient explanation for 'meaningful review' by the courts."

B.     Combination of Impairments

Plaintiff next contends that the ALJ erred in failing to include partial sacralization, pain disorder, and osteoarthritis of the knees among her severe impairments at step two of the sequential analysis. (Pl.'s Br. at 11-13, 18-19.) "However, even assuming these impairments were severe, such error does not necessitate remand. As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).[5]   In the present case, the ALJ identified both mental and physical severe

_____

[5] Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id.   However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Comm'r, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result). Rivera v. Astrue, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. August 22, 2013).

impairments at step two of the sequential analysis (Tr. at 27), and considered and discussed all of the relevant medical evidence in determining Plaintiff's RFC, and Plaintiff fails to specify how any of the additional impairments she now names would require restrictions beyond those included in the RFC.

In terms of physical impairments, the ALJ included degenerative disc disease of the lumbar spine among Plaintiff's severe impairments (Tr. at 27) and, after discussing and weighing the medical evidence of this impairment at great length, limited Plaintiff to medium work in light of her back pain (Tr. at 28-35). Plaintiff now points to an x-ray taken in 2007, two years prior to the alleged onset date, as evidence of partial sacralization of her lumbar spine. (Tr. at 482.) However, Plaintiff herself never suggests what limitations, if any, her partial sacralization might require. Instead, she theorizes that this condition "may well have been" the source of her allegedly disabling pain. (Pl.'s Br. at 12.) However, no medical source, including Dr. Spivey who reviewed the 2007 x-ray noting partial sacralization and who ordered and reviewed multiple additional images from 2009 and 2011, opined that this condition played any role, let alone the principal role, in Plaintiff's back pain. (See, e.g., Tr. at 466, 481-82.) The ALJ considered and discussed all of the medical evidence, including Dr. Spivey's treatment notes, and Plaintiff fails to show that the ALJ erred by omitting from his decision a specific mention of partial sacralization.

Plaintiff's challenge regarding her pain disorder fails for similar reasons. As the ALJ noted, Plaintiff's consultative psychiatric examiner, Dr. Richard Spencer, included pain disorder among his diagnoses, along with adjustment disorder, generalized anxiety disorder, and chronic alcoholism. (Tr. at 32, 402.) Even with these diagnoses, Dr. Spencer concluded

that Plaintiff had adequate social functioning and could understand instructions, although he noted that "adjustments in occupational areas appear poor." (Tr. at 32, 402.) Significantly, neither Dr. Spencer nor any other medical source specified which, if any, of Plaintiff's recommended functional limitations could be attributed to pain disorder.

State agency psychological consultant Dr. Jonathan Mayhew subsequently gave Dr. Spencer's evaluation significant weight when undertaking his mental RFC assessment of Plaintiff. (Tr. at 428.) Dr. Mayhew found that Plaintiff seemed dysphoric, which Plaintiff blamed on reported spinal pain, but Dr. Mayhew opined that, "from a mental standpoint, she does not present with limitations which would preclude performance of at least SRRTs in a stable, low social work setting." (Tr. at 34, 428.) The ALJ explicitly considered and incorporated both Drs. Spencer and Mayhew's opinions in concluding that Plaintiff can perform "only unskilled simple, routine, repetitive tasks . . . but should only engage in occasional interaction with others [in] a work environment with stable hours and locations." (Tr. at 29.) As neither the record nor Plaintiff herself identify any omitted medical evidence relating to Plaintiff's pain disorder or suggest any additional RFC limitations as a result of that disorder, substantial evidence supports the ALJ's determination regardless of the omission of pain disorder as a severe impairment at step two.

Plaintiff's final step two challenge regarding bilateral osteoarthritis of the knees merits the same result. Plaintiff contends that "[t]he ALJ erred by failing to consider . . . osteoarthritis a severe impairment at step two of the sequential evaluation, and by failing to sufficiently consider that impairment in combination with pain disorder when determining [Plaintiff's] RFC." (Pl.'s Br. at 19.) The ALJ explicitly acknowledged Plaintiff's complaints of bilateral

knee pain, but also noted that x-rays revealed "only 'mild' joint space narrowing of the medial tibia and femur compartments bilaterally." (Tr. at 32) (citing Tr. at 557). Although Plaintiff argues that, after receiving Synvisc injections to treat this condition, she "had *increased* pain, reduced range of motion[,] and crepitus" (Pl.'s Br. at 19), thereby suggesting that her knee impairment was more severe or limiting than acknowledged by the ALJ, the record itself reveals just the opposite. Following Dr. Schaeffer's observation of "somewhat mild crepitus to range of motion" bilaterally, he injected Synvisc into Plaintiff's left knee. "She had good results in about 5-10 minutes with much less pain. Better range of motion. No more clicking noted." (Tr. at 556.) Dr. Schaeffer further advised that he could inject the other knee on a return visit (id.), but the record contains no evidence of further knee complaints or treatment. In sum, nothing in the record suggests that the ALJ failed to discuss relevant evidence relating to Plaintiff's knee impairment or that such evidence requires limitations beyond those contemplated by the RFC. Substantial evidence therefore supports the ALJ's step two determination regarding all three of the additional impairments alleged by Plaintiff.

C.    Credibility

Finally, Plaintiff argues that the ALJ failed to properly assess her pain allegations under the framework set out in Craig v. Chater, 76 F.3d at 594-95. In Craig, the Court of Appeals for the Fourth Circuit provided a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an

impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference.

In the present case, the ALJ determined at step one of the <u>Craig</u> analysis that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. at 33.) However, the ALJ found at step two that substantial evidence failed to support the intensity and persistence of the pain alleged by Plaintiff or the extent to which her pain limited her ability to work. Therefore, the ALJ ultimately concluded that Plaintiff's back pain, although severe, was not disabling. Specifically, the ALJ found that the degree of pain and the limitations alleged by Plaintiff were inconsistent with the objective medical evidence and other evidence, including the factors set out in 20 C.F.R. § 404.1529(c)(3), and he structured her RFC accordingly. Notably, the ALJ found that "with the exception of an occasional limping gait, the results of many physical examinations did not show any markedly severe difficulties with ambulation, moving about, with sitting, or with the use of the upper extremities." (Tr. at 33.) He also noted the failure of any physician to pinpoint the source of Plaintiff's allegedly disabling pain, as well as Plaintiff's chemical dependence and dismissal from a pain management practice during the period at issue.

To refute the first of these justifications, Plaintiff cites the opinion of Dr. Alan Rosenbloom, who performed a one-time consultative physical examination of Plaintiff on November 3, 2009. Dr. Rosenbloom opined that Plaintiff's condition "affects her ability to sit, stand, move about, [and] lift and carry, all related to her back pain." (Pl.'s Br. at 17) (citing Tr. at 379). Dr. Rosenbloom also found that Plaintiff "can handle light objects[,] hear[,] and speak," but that "[t]raveling is quite problematic [because] sitting . . . for any length of time [causes Plaintiff] increasing back and leg pain." (Tr. At 379.)

The ALJ assigned only "some weight" to these opinions. The ALJ acknowledged that Plaintiff's impairments "affected her ability to perform exertional activities," but the ALJ further emphasized Dr. Rosenbloom's failure to "quantify his assessment" of Plaintiff's abilities. (Tr. at 34.) Plaintiff fails to show that Dr. Rosenbloom's opinions do, in fact, conflict with the finding of no "markedly severe difficulties" in the exertional activities specified by the ALJ. In the circumstances, Dr. Rosenbloom's opinion does not provide a basis for overturning the ALJ's credibility findings.

Plaintiff next alleges that the ALJ improperly relied on Plaintiff's chemical dependence as a basis for rejecting her allegations of disabling pain. However, the ALJ did not "'discount [claimant's] subjective complaints simply because of [her] dependence on narcotic pain medications.'" (Pl.'s Br. at 14) (quoting Van Dine v. Astrue, No. 03:10-cv-00712-HU, 2012 WL 1069985, at *48 (D. Or. Feb. 27, 2012)). Rather, the ALJ noted Plaintiff's ongoing use of multiple narcotic pain medications and status as a recovering alcoholic and prior marijuana user in his discussion of specific adverse factors from the period at issue, including at least two instances of diluted urine drug screen specimens (Tr. at 33, 458-59, 481), Plaintiff's dismissal

from a pain management practice for non-compliance (Tr. at 33, 458-59), overuse of her narcotic pain medication (Tr. at 33, 444, 465, 466, 469, 471), and the lack of both significant physical findings upon exam and a clear source for the degree of pain Plaintiff alleged (Tr. at 33, 379, 432).[6]  The ALJ reasonably concluded, based on all of the above factors, that "the issue regarding pain versus substance addiction is still prevalent."  (Tr. at 33.)  Substantial evidence therefore supports his adverse credibility finding.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #6] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #9] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 22nd day of February, 2016.

                                               /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge

---

[6] To the extent that Plaintiff's credibility challenge relies on her assertion that her severe pain was caused by partial sacralization at L5, it fails for the reasons set out in Part B of this Discussion.